UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CRISTIAN LOPEZ,

                            Plaintiff,                      **DECISION AND ORDER**

            -against-                               22-cv-9155 (AEK)

JGR SERVICES INC., *et al.,*

                            Defendants.
-------------------------------------------------------------x

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.**[1]

       Plaintiff Cristian Lopez commenced this action on October 25, 2022, asserting claims against Defendants JGR Services Inc., Cuetes Corporation ("Cuetes"), Juan Martinez, and Beatriz Vargas (collectively, "Defendants") for violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") based on Defendants' alleged failure to pay overtime wages, failure to pay wages on a weekly basis, failure to satisfy statutory recordkeeping requirements, and failure to provide a proper wage notice and proper wage statements.[2] ECF No. 1. Before the Court is the parties' application for approval of a proposed settlement agreement in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). *See* ECF No. 36 ("*Cheeks* Application" or "*Cheeks* App."). For the reasons that follow, the application for approval of the proposed settlement agreement is DENIED WITHOUT PREJUDICE.

---

[1] The parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c). ECF No. 29.

[2] Although this lawsuit originally was filed by Mr. Lopez both individually and on behalf of all others similarly situated, the proposed settlement would resolve only Mr. Lopez's individual claims.

## DISCUSSION

In the Second Circuit, "parties cannot privately settle FLSA claims with a stipulated dismissal with prejudice under Federal Rule of Civil Procedure 41 absent the approval of the district court or the [United States] Department of Labor." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 599 (2d Cir. 2020). Thus, a district court in this Circuit must review a proposed FLSA settlement and determine whether it is fair and reasonable. *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-cv-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021). When reviewing a proposed settlement agreement in an FLSA case, district courts consider the "totality of circumstances," *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), to assess whether the agreement is fair and reasonable, including the following factors:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Fisher*, 948 F.3d at 600 (quoting *Wolinsky*, 900 F. Supp. 2d at 335-36). In addition, the following factors "weigh against approving a settlement":

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted). "[T]here is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Xiao v. Grand Sichuan Int'l St. Marks*,

2

*Inc.*, Nos. 14-cv-9063, 15-cv-6361 (RA), 2016 WL 4074444, at *2 (S.D.N.Y. July 29, 2016) (quotation marks omitted).

Having reviewed the parties' submissions in support of the proposed settlement, and having considered the totality of the circumstances, the Court finds that the parties' proposed settlement agreement is fair and reasonable; before the proposed agreement can receive final approval, however, it must be revised to accurately reflect the agreed-upon terms, as explained below, and Plaintiff's counsel must submit additional information to enable the Court to assess the reasonableness of the proposed attorneys' fee award..

All five *Wolinsky* factors weigh in favor of approval.  First, the proposed settlement agreement provides for a total settlement payment of $30,000, with $20,000 payable to Plaintiff and $10,000 payable to Plaintiff's counsel as attorneys' fees and costs.  *See Cheeks* App. Ex. A ("Settlement Agreement") ¶ 2.a.iii.iv.  While the *Cheeks* Application states that counsel calculated that Defendants failed to pay Plaintiff $40,349 in overtime wages, *Cheeks* App. at 2, the chart attached to the application indicates a total of $73,550 in unpaid overtime wages, *see* ECF No. 36-3 ("Damages Chart").  Plaintiff's counsel does not explain the discrepancy between the assertion in the *Cheeks* Application and the Damages Chart.  The Court has relied on the information in the Damages Chart—which presents a more favorable possible recovery for Plaintiff—for purposes of this analysis.  Moreover, as noted in the *Cheeks* Application, Plaintiff's total FLSA damages would double if he were to recover liquidated damages, and would increase by another $10,000 if he were to recover for the alleged NYLL recordkeeping and notice violations.  *See Cheeks* App. at 2; *see also* Damages Chart.  Based on the foregoing, Plaintiff's maximum potential recovery at trial would be $157,100.  Even using these higher figures, the $20,000 payable to Plaintiff—which constitutes approximately 13 percent of

Plaintiff's maximum potential recovery and approximately 27 percent of Plaintiff's total alleged unpaid wages—is still fair and reasonable.  This percentage of recovery is in line with recovery amounts in other FLSA cases in this District where courts have approved settlement terms.  *See, e.g.*, *Cronk v. Hudson Valley Roofing & Sheetmetal Inc.*, 538 F. Supp. 3d 310, 323 (S.D.N.Y. 2021) (approving settlement amount that was slightly less than 13 percent of the plaintiff's potential recovery at trial); *Zorn-Hill v. A2B Taxi LLC*, No. 19-cv-1058 (KMK), No. 18-cv-11165 (KMK), 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) (approving settlement where the recovery of a certain subset of plaintiffs was "12.5% of the best-case scenario," since that amount was "not dramatically lower than similar settlements approved by courts in this district").  This recovery is particularly appropriate here, where Defendants have asserted a limited ability to pay, as discussed further below.  *See Fuentes v. Highgate Cleaners Inc.*, No. 20-cv-3925 (OTW), 2022 WL 14717835, at *1 (S.D.N.Y. Oct. 25, 2022) (approving settlement where plaintiff received "approximately 13% of his owed back wages," and approximately 6 percent of his best-case recovery at trial, where "one of the main driving factors in approving the settlement agreement [was] [d]efendants' assertion of a limited ability to pay."); *see also Anzovino v. Wingate of Dutchess, Inc.*, No. 21-cv-7625 (AEK), 2023 WL 348024, at *2 (S.D.N.Y. Jan. 20, 2023) ("Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable." (quotation marks omitted)).

      Second, the settlement will enable the parties to avoid significant additional expenses and burdens associated with establishing their claims and defenses.  The parties settled this action early in the litigation and had not yet undertaken any discovery or engaged in any motion practice, all of which would have occurred before trial.

Third, both parties would have faced significant litigation risks if this case had proceeded to trial. Defendants vigorously dispute, and believe they have viable defenses to, Plaintiff's claims. It is certainly possible that Plaintiff could recover nothing at all if he were to proceed to trial. But even if Plaintiff were to prevail at trial, there are concerns with respect to Defendants' financial condition and Plaintiff's ability to collect on any judgment entered in his favor. *See Cheeks* App. at 2. Cuetes is named as a defendant in a wage-and-hour collective and class action that was filed in this District on October 1, 2020. *See Salazar v. Cuetes Corp.*, Dkt. No. 20-cv-8167 (AEK) (S.D.N.Y.). In that matter, Juan Martinez, the president of Cuetes and a defendant in this case, submitted an affidavit in which he attested to Cuetes's financial difficulties, including a loss of over $200,000 in ordinary business income in 2020; an outstanding tax liability of approximately $39,000 from tax year 2018; liability for an outstanding general liability insurance premium from 2019 of over $100,000; and potential liability as a defendant or third-party defendant in 18 state court actions. *See id.* at ECF No. 45-3 ¶¶ 8-11. For Defendants, given their financial limitations, the possibility of a substantial judgment against them at trial presents a serious risk to the ongoing viability of the business. This potential issue of Defendants' ability to satisfy a judgment weighs in favor of approving a settlement. *See, e.g., Flores v. Dynamic Wireless NYC LLC*, No. 21-cv-6160 (OTW), 2022 WL 3363584, at *2 (S.D.N.Y. July 1, 2022). Accordingly, because of the anticipated risks and costs involved in pursuing this matter through discovery and trial, settlement is an effective means of resolving the litigation for all parties.

Fourth, the settlement resulted from mediation with a private mediator, and is the product of arm's-length bargaining between experienced counsel.

Fifth, the Court has no reason to believe that the proposed settlement is the product of fraud or collusion.

Moreover, a number of the factors set forth in *Wolinsky* that weigh against approving a settlement do not exist in this case. Given that the employment relationship between Plaintiff and Defendants has ended, there is no likelihood that the circumstances that gave rise to this lawsuit will recur. Additionally, the complaint in this matter does not appear to raise novel factual or legal issues that would further the development of law in this area.

That said, certain of the *Wolinsky* factors potentially weigh against settlement approval—specifically, the existence of similarly situated plaintiffs and the history of FLSA non-compliance by at least one of the Defendants. As noted above, Cuetes is named as a defendant in a wage-and-hour collective and class action that was filed in this District. *See Salazar v. Cuetes Corp.*, Dkt. No. 20-cv-8167 (AEK) (S.D.N.Y.). In that matter, Cuetes reached a collective and class action settlement, which is awaiting preliminary approval by this Court. *Id.* at ECF Nos. 66, 68. The same attorney who represents Cuetes in the *Salazar* action represents Defendants in this action, yet the *Salazar* action was not addressed directly—as it should have been—in the parties' *Cheeks* Application.

Nevertheless, given all of the other factors that weigh in favor of settlement approval, the existence of the *Salazar* action—which covers a substantially similar time period—is not a sufficient reason for the Court to reject the proposed settlement here. As detailed above, the terms of this settlement are fair and reasonable for the individual Plaintiff in this action, and there are reasons why settlement of this individual lawsuit is in the best interests of the parties. Moreover, Plaintiff is the only employee affected by the settlement and dismissal of this lawsuit—Plaintiff's release here does not impair the rights of any other individuals who may

have valid claims against Defendants. While it is certainly relevant that Cuetes faces another lawsuit from different employees regarding its alleged failures to comply with federal and state wage-and-hour laws, that fact does not preclude approval of the settlement in this action when weighed against all of the reasons why settlement is an appropriate and beneficial outcome for the parties here.

The proposed Settlement Agreement also does not contain any problematic provisions that would preclude court approval. There are no confidentiality provisions in the proposed agreement, and although the agreement does include a mutual non-disparagement clause, that provision incorporates the necessary carve-out for truthful statements by the parties about their experiences litigating this case. *See Perez v. Pearl River Pastry, LLC*, No. 21-cv-1259 (AEK), 2022 WL 14757824, at *2 (S.D.N.Y. Oct. 25, 2022) (citing cases). The proposed Settlement Agreement also contains a release that is appropriately limited to the wage-and-hour claims asserted in this action and related claims that could have been asserted. *See, e.g., Illescas v. Four Green Fields LLC*, No. 20-cv-9426 (RA), 2021 WL 1254252, at *1 (S.D.N.Y. Apr. 5, 2021).[3]

With respect to attorneys' fees and costs, the proposed settlement provides for Plaintiff's counsel to receive $10,000 in fees, which is one-third of the total settlement amount; Plaintiff's counsel is foregoing any separate recovery of $552 in costs. *Cheeks* App. at 4; *see* Settlement Agreement ¶ 2.a.iii.iii ("Plaintiff's Counsel will receive a one third (1/3) of the total settlement in the amount of ($10,000) Ten Thousand Dollars, which includes costs."). "Courts in this District routinely award one third of a settlement fund as a reasonable fee in FLSA cases." *Santos v. YMY Mgmt. Corp.*, No. 20-cv-1992 (JPC), 2021 WL 431451, at *2 (S.D.N.Y. Feb. 8, 2021)

---

[3] The release provision in paragraph 3 of the proposed Settlement Agreement erroneously refers to the "Effective Date (as defined in Paragraph 12 below)," but the "Effective Date" is defined in paragraph 13. *See* Settlement Agreement ¶ 13.

(cleaned up). "However, even when the proposed fees do not exceed one third of the total settlement amount, courts in this [C]ircuit use the lodestar method as a cross check to ensure the reasonableness of attorneys' fees." *Id.* (cleaned up). Plaintiff's counsel has submitted contemporaneous time records and information regarding the relevant timekeeper to substantiate the fee application. *See Fisher*, 948 F.3d at 600 ("The fee applicant must submit adequate documentation supporting the requested attorneys' fees and costs.").

The Court cannot employ the lodestar method as a cross-check here, however, because the billing records provided by Plaintiff's counsel are incomplete and/or inaccurate. The dates for work that was performed in this case do not correspond to dates on the docket sheet and appear to be out of order. *See* ECF No. 36-2 ("Billing Records"). For example, page one of the Billing Records includes a time entry for 10/14/2023, which states "Draft Complaint Lopez v. Cuetes," but the complaint was filed in this action on October 25, 2022. There are several other time entries for dates in October and November 2023, even though the *Cheeks* Application was filed in September 2023. *See* Billing Records at 1. Further, the time entry for 2/17/2023 states "Clerk's certificate of Default and draft OTSC," *id.* at 3, but the docket sheet reflects that Plaintiff's counsel filed a request for a certificate of default on February 8, 2023, ECF Nos. 16, 18, and did not file an order to show cause at all. In addition, a court conference was held in this matter on June 6, 2023, *see* Docket Sheet, Minute Entry dated 6/6/2023, but Plaintiff's counsel's attendance at the conference is not reflected in the Billing Records. Accordingly, Plaintiff's counsel must revise and resubmit the Billing Records so that the Court can properly assess the reasonableness of the proposed attorneys' fee award.

The parties also must revise paragraph 2.a.iii.i of the proposed Settlement Agreement so that the installment payments for Plaintiff and Plaintiff's counsel add up to the proper amounts.[4] As written, Plaintiff would receive 15 installment checks of $700 each, for a total of $10,500, while Plaintiff's counsel would receive 15 installment checks of $300 each, for a total of $4,500. This would result in Plaintiff receiving an overall total settlement amount of $20,500, and Plaintiff's counsel receiving an overall total attorneys' fee award of $9,500, rather than the $20,000 / $10,000 division contemplated in paragraph 2.a of the proposed Settlement Agreement. The parties will have to revise the installment check amounts written in the proposed Settlement Agreement so that Plaintiff ends up receiving an overall total of $20,000, and Plaintiff's counsel ends up receiving an overall total of $10,000.[5]

Finally, although the *Cheeks* Application requests that the Court "enter the proposed Stipulation and Order of Dismissal that is being submitted simultaneously herewith," *Cheeks* App. at 5; *see also* Settlement Agreement ¶ 8, no such stipulation and order of dismissal has been provided to the Court.

## CONCLUSION

For the foregoing reasons, the Court cannot approve the proposed submissions in their current form. The proposed Settlement Agreement must be revised in paragraph 2.a.iii.i, and in the other places indicated in footnotes 3 and 4, and Plaintiff's counsel must submit a corrected version of the Billing Records for the Court's review. In addition, the parties also must submit a

---

[4] The parties also need to correct the typographical error on the first page of the proposed Settlement Agreement, where it incorrectly states that this action was initiated in the United States District Court for the *Eastern* District of New York.

[5] Presumably, the appropriate amount of the installment payments should be $666.67 per payment for Plaintiff and $333.33 per payment for Plaintiff's counsel.

9

proposed stipulation and order of dismissal. All of these materials must be filed by no later than December 8, 2023.

The Clerk of Court is hereby directed to mark the motion at ECF No. 36 as DENIED WITHOUT PREJUDICE.

Dated: November 27, 2023
White Plains, New York

**SO ORDERED.**

_____
ANDREW E. KRAUSE
United States Magistrate Judge